Filed 11/26/08    NO. 4-08-0188

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SUZANNE ELLIOTT DAVIDSON and JANALEE | ) | Appeal from |
| STORM, Coexecutors of the Estate of L. | ) | Circuit Court of |
| Dee Vanderhoof; JANALEE STORM, | ) | Coles County |
| Individually; and SUZANNE ELLIOTT | ) | No. 06CH42 |
| DAVIDSON, Individually, | ) | |
|       Plaintiffs-Appellees, | ) | |
|       v. | ) | |
| THURL S. PERRY and TRACY I. PERRY, | ) | Honorable |
| Husband and Wife, | ) | Teresa K. Righter, |
|       Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

Plaintiffs, Suzanne Elliott Davidson and Janalee Storm,
are the daughters and heirs of L. Dee Vanderhoof (Dee), deceased.
During his lifetime, Dee owned property that was adjacent to
property owned by defendants, Thurl S. and Tracy I. Perry.  In
April 2006, Davidson and Storm, as coexecutors of Dee's estate
and as individuals, filed a complaint for equitable relief
against defendants, asserting Dee had acquired by adverse posses-
sion a tract of land that was titled to defendants.  In May 2007,
plaintiffs filed a motion for summary judgment, which the trial
court denied.  In November 2007, plaintiffs filed a second motion
for summary judgment.  In February 2008, the court granted
summary judgment in plaintiffs' favor, finding plaintiffs had
established all of the elements of adverse possession.

Defendants appeal, contending the trial court erred by

granting summary judgment because genuine issues of material fact still exist. We affirm.

## I. BACKGROUND

In a warranty deed dated May 12, 1950, Dee and his wife, Helen Vanderhoof, received title to a tract of land in rural Coles County from Russell L. and Faye C. Fuller (Fullers). In June 1950, the Fullers executed a quitclaim deed to Dee and Helen to more accurately describe the premises sought to be conveyed in the May 12, 1950, warranty deed. Dee died in January 2005, and the record does not indicate when Helen died. As stated, plaintiffs are Dee's daughters, heirs, and coexecutors of his estate. Janalee is married to Perley Storm. The tract of land purchased by Dee and Helen is hereinafter referred to as the Vanderhoof tract.

Adjacent to the Vanderhoof tract's northern border are two tracts. The easterly tract of the two is currently owned by Dr. James Williams. Dr. Williams purchased his property in February 1996. The westerly tract is currently owned by defendants and is hereinafter referred to as the Perry tract. Defendants purchased their tract in November 2001 from a trust.

In 1977, a prior owner of the Perry tract had a survey done, which indicated the southern border of the Perry tract was 54 feet south of an existing fence line. That fence remained in existence until Dee's death. Shortly after Dee's death, defen-

dants removed that fence and built a new fence on what was the southern border of their property according to the 1977 survey. The piece of land now in dispute is the southern 54 feet of the Perry tract and is hereinafter referred to as the disputed tract. The original fence ran along the northern border of the disputed tract.

In April 2006, plaintiffs filed their complaint for equitable relief, asserting Dee obtained ownership of the disputed property by adverse possession. That same month, defendants filed a motion to dismiss plaintiffs' complaint, contending plaintiffs failed to state a cause of action. The trial court granted defendants' motion to dismiss and allowed plaintiffs to file an amended complaint. In July 2006, plaintiffs filed an amended complaint, asserting ownership by adverse possession and seeking to quiet title to the disputed tract.

Defendants again filed a motion to dismiss, contending they and their predecessors had paid real-estate taxes on the disputed property since 1977 and neither plaintiffs nor their predecessors had adversely possessed the disputed tract. Defendants also noted the 1977 survey and asserted they and their predecessors had possessed the disputed property for the past 29 years. Additionally, defendants attached seven affidavits to their motion, one of which was later stricken by the trial court. All of the affidavits addressed the disputed tract during the

time period during which defendants owned the Perry tract. Defendants also filed a counterclaim, asserting they had suffered damages due to plaintiffs' claim, which clouded title to their property. In response, plaintiffs filed a motion to dismiss the counterclaim and a response to defendants' motion to dismiss plaintiffs' amended complaint. Defendants later filed an additional affidavit that again addressed the period of their ownership. After a hearing, the trial court denied defendants' motion to dismiss plaintiffs' amended complaint, granted plaintiffs' motion to dismiss defendants' counterclaim, and allowed defendants to file a new counterclaim.

In May 2007, plaintiffs filed a motion for summary judgment, noting defendants had failed to file a response to their amended complaint and asserting they had established all of the elements of adverse possession. Attached to plaintiffs' motion was an affidavit by Perley, Perley's deposition, and Dr. Williams's deposition. In June 2007, defendants filed a response to the summary-judgment motion, attaching pictures of the disputed tract. Defendants also filed a response to plaintiffs' amended complaint, denying the allegations and asserting a statute-of-limitations defense. Moreover, in their response, defendants raised adverse-possession and civil-conspiracy counterclaims. After a June 2007 hearing on the summary-judgment motion, the trial court denied it, finding questions of fact

- 4 -

existed.

In November 2007, plaintiffs filed a second motion for summary judgment, again contending no questions of material fact existed disputing all five elements of adverse possession had existed for more than 20 years. In support of the motion, plaintiffs attached Davidson's affidavit, Perley's affidavit and deposition, and Dr. Williams's deposition.

On the day of the January 31, 2008, hearing on the second summary-judgment motion, defendants filed their response to the motion and attached an affidavit by Thurl. Defendants also filed a motion to strike portions of Davidson's affidavit. At the hearing, plaintiffs made a motion to strike defendants' response and motion to strike because of their late filing. The trial court granted the motion as to defendants' response but did not specifically address defendants' motion to strike. Defendants never obtained a ruling on their motion to strike. After hearing the parties' arguments, the court took the matter under advisement.

On February 29, 2008, the trial court filed its written order, granting plaintiffs' second summary-judgment motion. On March 12, 2008, defendants filed a notice of appeal from that judgment in compliance with Supreme Court Rule 303 (210 Ill. 2d R. 303).

## II. ANALYSIS

On appeal, defendants challenge the trial court's grant of summary judgment in favor of plaintiffs on their adverse-possession claim.

## A. Standard of Review

A grant of summary judgment is only appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); Williams v. Manchester, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8-9 (2008). With regard to analyzing summary-judgment motions, our supreme court has stated the following:

"In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts. Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of liti-

gation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." <u>Williams</u>, 228 Ill. 2d at 417, 888 N.E.2d at 9.

We further note the nonmovant cannot rely simply on his or her complaint or answer to raise an issue of fact when the movant has supplied facts that, if not contradicted, would entitle him or her to judgment as a matter of law. <u>Jackson Jordan, Inc. v. Leydig, Voit & Mayer</u>, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630 (1994). We review <u>de</u> <u>novo</u> the trial court's grant of a motion for summary judgment. See <u>Williams</u>, 228 Ill. 2d at 417, 888 N.E.2d at 9.

### B. Adverse Possession

To establish title by adverse possession under the 20-year statute (735 ILCS 5/13-101 (West 2006)), the party asserting adverse possession must establish possession of the property for the entire statutory period, and that possession must have been "(1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under claim of title inconsistent with that of the true owner." <u>Gacki v. Bartels</u>, 369 Ill. App. 3d 284, 292, 859 N.E.2d 1178, 1186 (2006). "All presumptions are in favor of the title owner, and the party claiming title by adverse possession must prove each element by clear and unequivocal evidence." <u>Knauf v. Ryan</u>, 338 Ill. App. 3d 265, 269,

- 7 -

788 N.E.2d 805, 808 (2003).

## 1. Exclusivity

Defendants first assert plaintiffs failed to show exclusivity because of the 1977 survey and the setting of markers.

As noted above, to prove title by adverse possession, plaintiffs' possession of the disputed tract had to be exclusive. See Gacki, 369 Ill. App. 3d at 292, 859 N.E.2d at 1186. Under adverse possession, "[e]xclusivity means the claimant's rights do not depend on the rights of others." Peters v. Greenmount Cemetery Ass'n, 259 Ill. App. 3d 566, 570, 632 N.E.2d 187, 190 (1994). Here, defendants do not contest plaintiffs' assertion their predecessor's possession of the disputed property did not depend on anyone else.

Exclusivity also demands the adverse possessor deprive the rightful owner of all possession. City of Des Plaines v. Redella, 365 Ill. App. 3d 68, 76, 847 N.E.2d 732, 738 (2006); Towle v. Quante, 246 Ill. 568, 576, 92 N.E. 967, 970 (1910). Defendants assert a claim of possession and not actual possession of the disputed tract is sufficient to defeat plaintiffs' establishment of exclusivity. However, in violation of Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), defendants fail to cite any authority in support of that contention.

In his affidavit, Perley stated he had been on the

Vanderhoof tract on a weekly, and sometimes daily, basis since 1969 and had never observed anyone else in possession of the disputed tract until 2005 when defendants erected the new fence. In his deposition, Perley testified the disputed tract was used as pasture for horses and other livestock until 1979. Hay was also baled on the property until 2004. Perley had hunted rabbits on the land as well. In her affidavit, Davidson (born in November 1946) stated her family moved onto the Vanderhoof tract in July 1950 and no one besides her father had been in possession of the disputed tract until defendants erected the new fence.

Defendants contend the 1977 survey and setting of markers shows their predecessors possessed the disputed tract. However, the survey plat indicates survey pins were placed only on the southwest and southeast corner of the disputed tract. Moreover, Perley described the survey pins as located "right at the top of the ground." Defendants cite no authority holding the placement by a surveyor of two survey pins at ground level alone shows possession by the true owner. We fail to see how two pins at ground level in a rural area is in itself indicative of possession. We further note that, in asserting a claim of adverse possession, the claimant's mere survey of land is insufficient to establish possession. Klingel v. Kehrer, 81 Ill. App. 3d 431, 438, 401 N.E.2d 560, 566 (1980); see also White v. Harris, 206 Ill. 584, 587, 591, 69 N.E. 519, 521 (1903) (survey

with stones placed at the corners of the quarter sections).

Moreover, defendants' allegation plaintiffs' predecessor was notified of the survey and its results in 1977 is unsupported. In their brief, defendants cite as support for the contention their response to the motion for summary judgment, which only contains the assertion the facts are undisputed defendants' predecessor notified plaintiffs' predecessor of the survey and the location of the Perry tract's actual boundaries. However, Perley, who was at the Vanderhoof tract regularly and was present for discussions about the boundary lines, stated in his deposition he was not aware of the pins until 1996 when one of defendants' predecessors informed Dee he was going to move the fence. Moreover, plaintiffs' materials in support of their motion show their predecessor's continued use of the disputed tract and defendants' predecessors continued lack of use of the property. That evidence also suggests plaintiffs' predecessor was unaware of the survey results. Thus, defendants' unsupported assertion in their response to summary-judgment motion does not create a question of material fact.

In any event, a prior case has found notice of a survey and its results are not considered possession. In <u>Cobb v. Nagele</u>, 242 Ill. App. 3d 975, 977, 611 N.E.2d 599, 601 (1993), the defendant had a survey done in 1982 showing the disputed property belonged to him but did not enter the disputed strip of

land until 1987.  The defendant asserted the plaintiffs' use was permissive.  Cobb, 242 Ill. App. 3d at 979, 611 N.E.2d at 602.  While the defendant testified he knew even before the 1982 survey that he owned the disputed land, the Cobb court found his testimony "unworthy of belief."  Cobb, 242 Ill. App. 3d at 979, 611 N.E.2d at 602.  Specifically, the Cobb court pointed out "[t]he defendant did not explain why, if he always knew that he had more land, he did not give the plaintiffs notice until 1982 and why he did not attempt possession until 1987."  (Emphasis added.)  Cobb, 242 Ill. App. 3d at 979-80, 611 N.E.2d at 602.  The Cobb court concluded the trial court correctly determined plaintiffs had proved title by adverse possession.  Cobb, 242 Ill. App. 3d at 980, 611 N.E.2d at 602.

Additionally, the fact defendants were able to tear down the old fence and install a new one right after Dee's death in 2005 is irrelevant as to the condition of the fence during an earlier time period.  Plaintiffs' affidavits and depositions show their predecessor was the only one in possession of the disputed tract until 2005 when defendants built the new fence.  Thus, the fence was sufficient notice to keep others out.

Further, this case is distinguishable from Hankey v. VanScyoc, 338 Ill. 533, 536, 170 N.E. 749, 750 (1930), where the supreme court found the claimants did not prove title by adverse possession.  There, the owner by title testified about using the

disputed lane and fencing off the north end of the lane when he was done using it. Hankey, 338 Ill. at 535-36, 170 N.E. at 750. Thus, the claimants could not show the titleholder was deprived of possession of the lane. Moreover, a person who had lived on the claimants' property testified he told the claimants the lane belonged to the titleholders. Hankey, 338 Ill. at 535-36, 170 N.E. at 750. In this case, such evidence was not presented.

Accordingly, we find no questions of material fact exist as to exclusivity, and plaintiffs' materials in support of their second summary-judgment motion were sufficient to prove exclusivity clearly and unequivocally.

## 2. Hostile or Adverse

Defendants also assert plaintiffs failed to show their predecessor's possession was hostile or adverse. If a claimant's possession of the land is permissive, that possession cannot be hostile or adverse. See Ryan, 338 Ill. App. 3d at 269-70, 788 N.E.2d at 809; Urbaitis v. Commonwealth Edison, 143 Ill. 2d 458, 474, 575 N.E.2d 548, 555 (1991).

In contending plaintiffs' predecessor's use was permissive, they again point to the 1977 survey. We again note defendants' allegation plaintiffs' predecessor was informed of the 1977 survey results is unsupported. Moreover, we also point out the Cobb case, where the Third District rejected the defendant's argument the plaintiffs' use of the disputed land was permissive

where the defendant had notified the plaintiffs of the survey results. Cobb, 242 Ill. App. 3d at 979-80, 611 N.E.2d at 602.

For possession to be "hostile," the claimant's "ownership [must be] incompatible with that of the true owner and all others." Joiner v. Janssen, 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174 (1981). Here, Perley's deposition shows plaintiffs' predecessor used the disputed tract as pasture for his livestock and to harvest hay. Plaintiffs' predecessor made money from the hay. Moreover, Perley stated that, in 1996, defendants' predecessor informed plaintiffs' predecessor he was going to move the fence. Plaintiffs' predecessor responded defendants' predecessor was not going to move the fence, and the fence remained in place until 2005. Such use of the land by plaintiffs' predecessor was clearly incompatible with that of defendants' predecessor and others. Accordingly, plaintiffs sufficiently showed their predecessors use was hostile and no question of material fact existed.

### 3. 20 years

Defendants further challenge plaintiffs' assertion the 20-year period began to run in 1950, asserting any statements about that year are unsupported and would be inadmissible at trial. However, defendants again fail to cite to any authority that Davidson's statements in her affidavit would have been inadmissible at trial. Regardless, like the trial court, we have

addressed the 1977 survey and found it did not destroy exclusivity or hostility, and thus the 20-year period did not need to start in 1950 for plaintiffs to establish adverse possession.

### 4. Color of Title

Defendants last assert a material question of fact exists as to whether they regained title to the disputed tract by adverse possession under the seven-year statute for adverse possession.

The seven-year statute is contained in section 13-109 of the Code of Civil Procedure (735 ILCS 5/13-109 (West 2006)) and requires actual possession. Cobb, 242 Ill. App. 3d at 980, 611 N.E.2d at 602. We again note the Cobb case, where the defendant had a survey done in 1982, which showed the disputed property belonged to him, but, he did not enter that land until 1987. Cobb, 242 Ill. App. 3d at 977, 611 N.E.2d at 601. The Third District concluded the defendant had not attempted actual possession of the disputed land until 1987 and thus was not in possession for the requisite seven years. Cobb, 242 Ill. App. 3d at 980, 611 N.E.2d at 602.

Here, none of the affidavits or depositions indicate defendants or their predecessors entered the disputed tract until 2005. Thus, defendants have not shown actual possession and cannot establish adverse possession of the disputed tract under the seven-year statute.

- 14 -

### III. CONCLUSION

For the reasons stated, we affirm the trial court's grant of summary judgment in plaintiffs' favor.

Affirmed.

STEIGMANN, J., concurs.

COOK, J., dissents.

_____

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse and remand.

Defendants are the current owners of the "Perry Tract," which adjoins plaintiffs' tract on the north. Prior owners were J.F. Ryan (1950s), Bob Perry, and Mr. Singer (1996). A fence was built near the south line of the Perry Tract in 1950. Plaintiff Davidson's affidavit states that "[i]n July of 1950 [the parties' predecessors] together agreed to construct a fence to separate their respective properties." Plaintiff Davidson, however, was three years old in July 1950, and her affidavit does not explain how she reached that conclusion. A survey was done of the Perry Tract on April 18, 1977. That recorded survey showed the 1950 fence to be 54 feet north of the actual south line of the Perry Tract. As a part of the survey, survey pins were placed on the southwest and southeast corners of the Perry Tract. Plaintiff Storm's husband, Perley, stated in an affidavit that <u>he</u> was not aware of the survey pins until 1996, when one of defendants' predecessors informed plaintiffs' predecessor (Dee Vanderhoof) he was going to move the fence. The affidavits fail to indicate whether Vanderhoof was aware of the survey pins or whether Vanderhoof's entry onto the 54 feet tract was with the permission of defendants' predecessors. Perley concedes in his affidavit, however, that the disputed tract was not used as a pasture for horses and livestock after 1979, shortly after the survey.

- 16 -

Both defendants' predecessor (Ryan) and Dee grazed horses on their property.  In the 1950's, Ryan planted multiflora rose, a vigorous thorny rose, on his side of the fence.  Plaintiff Davidson's affidavit states that subsequent to 1985, the multiflora rose began to grow on the south side of the fence and "was not cut down by L. Dee Vanderhoof as there was no longer any livestock to graze in that area."  Defendants presented the affidavits of several neighbors that no updates or improvements were made to the 1950 fence or property in question and the area was filled with unattended brush.

Defendants purchased the Perry Tract in 2001.  Defendants' predecessors are apparently deceased.  Dee died in 2005.  Shortly thereafter, defendants removed the old fence, removed the multiflora rose, and built a new fence on the surveyed south line.  In April 2006, plaintiffs brought this action, asserting Dee obtained ownership of the disputed property by adverse possession.  On February 29, 2008, the circuit court granted plaintiff's motion for summary judgment, finding that "[p]laintiffs have established all necessary elements for adverse possession."  The court found further that the survey "did not disrupt the possession of [p]laintiff's predecessor" and "all evidence presented *** reflects that nothing changed after the 1977 survey."

The purpose of summary judgment is not to try a ques-

tion of fact but rather to determine whether a genuine question of material fact exists. Bagent v. Blessing Care Corp., 224 Ill.2d 154, 162, 862 N.E.2d 985, 991 (2007). Summary judgment is not a way to conduct a trial by affidavit. Equilease Corp. v. Cattlemen's Freezer Meats, Inc., 13 Ill. App. 3d 1, 3, 299 N.E.2d 419, 420 (1973). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). "The trial court cannot make credibility determinations or weigh the evidence at the summary judgment stage." AYH Holdings, Inc. v. Avreco, Inc., 357 Ill. App. 3d 17, 31, 826 N.E.2d 1111, 1124 (2005).

The party moving for summary judgment bears the initial burden of production. Welton v. Ambrose, 351 Ill. App. 3d 627, 633, 814 N.E.2d 970, 976 (2004). Until that burden is met, the opposing party is under no obligation to submit affidavits and may rely solely on the pleadings to create a question of material fact. Kleiss v. Bozdech, 349 Ill. App. 3d 336, 350, 811 N.E.2d 330, 340-41 (2004). Affidavits in support of a motion for summary judgment shall be made on the personal knowledge of the affiant; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if

sworn as a witness, can testify competently thereto. 210 Ill. 2d R. 191(a). Affidavits in support of a motion for summary judgment should be strictly construed and must leave no question as to the movant's right to judgment. Equilease, 13 Ill. App. 3d at 3, 299 N.E.2d at 420.

This case presents a number of factual issues. Was the 1950 fence intended to establish the boundary line, or was it just intended to separate Ryan's show horses from Dee's horses? Did Dee know about the survey in 1977, and is that why Dee stopped using the disputed tract as a pasture for horses and livestock after 1979? Is that why Dee did not object when multiflora rose overran the disputed tract in 1985? How could Dee have harvested hay on the disputed tract if the tract was overrun by multiflora rose? Was any use by Dee permissive? It is well established that use of vacant or wild, undeveloped, and unoccupied land is presumed to be permissive and not adverse. Estate of Welliver v. Alberts, 278 Ill. App. 3d 1028, 1037, 663 N.E.2d 1094, 1099 (1996). If Dee thought the property was his, why did Dee not file suit in 1996 when one of defendants' predecessors told Dee he was going to move the fence? Where a party is not diligent in seeking to quiet title to a disputed piece of property, the action may be barred by laches. People v. Weiszmann, 185 Ill. App. 3d 273, 277, 541 N.E.2d 205, 207 (1989). It is unfair to allow the record titleholder to pay taxes for many

- 19 -

years and then assert the property belongs to someone else. Plaintiffs' attorney argued that no evidence showed that the taxes had in fact been paid, but again it was plaintiffs' burden to establish their right to summary judgment, not defendants' burden to disprove such a right.

In addition to shouldering the burden in their motion for summary judgment, plaintiffs also must work against a presumption that favors the true titleholder in proving their claim of adverse possession. Knauf, 338 Ill. App. 3d at 269, 788 N.E.2d at 808. The burden of proof for an adverse possession claim is demanding, and the evidence must be unequivocal. Malone v. Smith, 355 Ill. App. 3d 812, 816, 823 N.E.2d 1158, 1161 (2005). The establishment of adverse possession is almost always a question of fact. City of Des Plaines v. Redella, 365 Ill. App. 3d 68, 75-76, 847 N.E.2d 732, 738 (2006) (easement by prescription).

The trial court erred when it decided this case by summary judgment. We should reverse and remand.